UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY SHEPARD,

     Petitioner,                    Case No. 2:09-CV-15007

v.

                                    HON. AVERN COHN

GARY CAPELLO,

     Respondent.

_____/

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Timothy Shepard (Petitioner) is a state inmate at the Baraga Maximum Correctional Facility in Baraga, Michigan, where he is serving a sentence of life imprisonment without parole for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b); seven years, six months to twenty years for first-degree home invasion, Mich. Comp. Laws § 750.110a(2); two hundred and twenty five months to seventy years for armed robbery, Mich. Comp. Laws § 750.529; two years for possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b; and two to five years for felon in possession of a firearm, Mich. Comp. Laws § 750.224f.  Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights, presenting seven claims.  Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims are procedurally defaulted or without merit.  For the reasons that follow, the petition will be denied.

## II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

Petitioner filed an appeal of right with the Michigan Court of Appeals, in which he was represented by the State Appellate Defender Office. The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Shepard,* No. 251742 (Mich.Ct.App. November 1, 2005). Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, in which he raised the same claims that he raised in his appeal of right before the Michigan Court of Appeals. The Michigan Supreme Court denied petitioner leave to appeal. *People v. Shepard,* 477 Mich. 872 (2006).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* in which he presented the seven claims that he now raises in his current petition. The trial court denied petitioner's motion for relief from judgment. *People v. Shepard*, No. 02-14804 (Wayne County Circuit Court, January 4, 2008). The Michigan appellate courts denied petitioner leave to appeal. *People v. Shepard*, No. 288355 (Mich.Ct.App. March 4, 2009); *lv. den.* 485 Mich. 926 (2009).

Petitioner has now filed a petition for writ of habeas corpus, on the following grounds:

I. Defendant is entitled to a new trial as he was denied his right to a separate jury and his constitutional right to a fair trial.

II. Defendant was denied his constitutional right to a fair trial when the trial court abused its discretion in admitting graphic color photographs depicting the crime victim at the crime scene.

III. Defendant was denied due process of law and a fair trial when the prosecutor, during closing arguments, vouched for the credibility of its

2

witnesses and denigrated defense counsel.

IV. Defendant was denied due process of law and a fair trial when prosecutor withheld evidence which would have corroborated in part defendant's alibi in violation of the rules of discovery.

V. Defendant was denied due process of law and a fair trial when trial counsel failed to investigate and present alibi defense; interfered with defendant's right to testify; failed to object to prosecutorial misconduct.

VI. Defendant was denied a fair trial due to the cumulative effect of the prejudicial errors which occurred during the course of his trial.

VII. Defendant was denied the effective assistance of appellate counsel when counsel failed to raise issues that were both obvious and significant on direct appeal, and in appellate counsel's inadequate post-conviction investigation.

### III. __Facts__

The material facts leading to petitioner's conviction are recited verbatim from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct

on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d

410, 413 (6th Cir. 2009):

> This case arises out of the murder of Sherryfield Abercrombie and an armed robbery at the Southport Apartments in Van Buren Township. In the early morning of November 5, 2002, Van Buren police officers were called to an apartment in Southport that was occupied by Pauline Jackson. Jackson reported that three men entered her apartment, one man who wore a mask pointed a gun at her, the men locked her and her brother in a bathroom, and stole some money. Jackson also told the officers that she was unable to reach her boyfriend, Abercrombie, by telephone. When the police left Jackson's apartment, one officer spotted Abercrombie's van elsewhere in the complex. The officers found Abercrombie inside and a pathologist testified that Abercrombie died from two bullet wounds to the head, fired at close range.
>
> The trial court conducted a jury trial in March 2003, but the proceedings ended in a mistrial because the jury could not reach a unanimous verdict. At defendants' retrial in September 2003, evidence revealed that Abercrombie was a drug dealer and that he exchanged several telephone calls with

3

Roberts and Thomas just before his murder.  Jackson also admitted at trial that, in addition to cash, the three men who entered her apartment stole some of Abercrombie's inventory of marijuana and cocaine.

At trial, Jackson recalled that one of the robbers wore a gorilla or monkey mask and that another man held a yellow baby blanket over his face. According to Jackson, the third man wore a caramel hooded sweatshirt that was tightly tied.  She testified that, though she could not see each robber's face in its entirety, the gunman who wore the mask was the same height and build as Thomas and that they have similar skin color and hair.  She also testified that the two other robbers resembled Shepard and Roberts.  Jackson remembered that, in addition to the drugs and money that the robbers stole, the men took some new shoes, including a pair of gray and white Air Jordan tennis shoes.

One of the prosecutor's key witnesses in the case was Jerry Bigham, who testified that he saw Roberts both before and after the robbery and murder. According to Bigham, on November 4, 2002, he and Roberts spent the day together at Bigham's apartment, playing dominoes and smoking marijuana. At some point, Shepard arrived at Bigham's apartment and Roberts left with him.  On the morning of November 5, 2002, Roberts called Bigham and asked him to meet him at a Motel 6 to smoke marijuana.  According to Bigham, when he arrived, Roberts was wearing a towel and a pair of pants. Roberts asked Bigham to drive him to his brother's house so he could get a pair of underwear.  Roberts explained that his clothes had blood on them because he, Shepard, and Thomas committed a robbery the night before, during which a victim was injured.  According to Bigham, Roberts expressed fear that Shepard would kill him because he knew that Shepard injured someone during the robbery.  Bigham also recalled that Roberts said someone wore a mask during the robbery.

Bigham testified that, at first, Roberts told him that they committed the robbery in Southfield and that the victim was stabbed.  However, Bigham and Roberts watched a local newscast that reported a robbery and murder of Abercrombie at the Southport Apartments and Roberts appeared to be worried.  Bigham admitted that Roberts denied any involvement in the crime, but he also testified that Roberts gave him a new pair of gray Air Jordan tennis shoes, which Pauline Jackson later testified were stolen from her apartment during the home invasion.  Furthermore, cellular phone records showed that, around the time of Abercrombie's murder, Roberts, Thomas and Abercrombie made numerous calls to one another.

Roberts testified on his own behalf after the jury deliberated the charges against Shepard and Thomas.  Roberts admitted that he participated in the robbery and murder and he again implicated Shepard and Thomas in the

crimes.  However, he maintained that Shepard and Thomas forced him to take part in the crimes at gunpoint.

*People v. Shepard,* No. 251742, * 2-3 (Mich.Ct.App. November 1, 2005).

## IV.  Analysis

### A.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### B.  Procedural Default

Respondent contends that petitioner's claims are procedurally defaulted

5

because petitioner raised them for the first time in his post-conviction motion, and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The trial court judge rejected petitioner's claims either on the merits or based on

6

her mistaken assumption that petitioner was barred under M.C.R. 6.508(D)(2) from obtaining relief on these claims because he had previously raised these claims on direct review. The trial court judge never mentioned M.C.R. 6.508(D)(3) in her opinion nor did she mention petitioner's failure to raise these claims on direct appeal as her basis for rejecting petitioner's claims.

Because the last reasoned state court decision rejected petitioner's claims without invoking the provision of M.C.R. 6.508 (D)(3), petitioner's claims are not procedurally defaulted. *Guilmette*, 624 F. 3d 289, 292. Moreover, petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise an ineffective assistance of appellate counsel claim. *Id.* at 291.

Finally, to the extent that petitioner is advancing any claims in his petition that he raised on his direct appeal (See Claim I, *infra*), these claims would not be procedurally defaulted under the provisions of 6.508(D)(3).

## C. Claim I - Separate Trials

Petitioner first contends that the trial court erred in refusing to grant his motion for a separate trial. Petitioner argues that the trial court should have granted his motion for a separate trial because co-defendant Lamar Roberts presented an antagonistic defense and because the admission of Lamar Roberts' out-of-court statement to Jerry Bigham violated petitioner's Sixth Amendment right to confrontation.

Taking petitioner's second argument first, on direct appeal, petitioner argued that the admission of Roberts' statement to Bigham violated his Sixth Amendment right to confrontation. The Michigan Court of Appeals rejected petitioner's claim, finding that

7

Roberts' statement to Bigham was non-testimonial, therefore, its admission did not violate the Sixth Amendment right to confrontation. *Shepard,* No. 251742, * 3-4.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *S ee Crawford v. Washington,* 541 U.S. 36 (2004). A defendant is denied the constitutional right of confrontation where a non-testifying co-defendant's incriminating confession is admitted at a joint trial. *Bruton v. United States*, 391 U.S. 123, 127-28 (1968). However, the Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *See also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford,* 541 U.S. at 51-52, 56.

Moreover, "[B]ecause it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." *U.S. v. Johnson*, 581 F. 3d 320, 326 (6th Cir. 2009).

Lamar Roberts' statement to Jerry Bigham did not qualify as a testimonial statement covered by the Confrontation Clause because it was a casual remark made to a friend or acquaintance and not one made to law enforcement. *See Deshai,* 538 F. 3d at 427; *See also Jackson v. Renico,* 179 Fed. Appx. 249, 255 (6th Cir. 2006). The admission of Roberts' out-of-court statement to Jerry Bigham did not violate petitioner's right to confrontation. The Michigan Court of Appeals' similar conclusion was therefore

8

not unreasonable.

Petitioner nonetheless contends that the trial court should have granted his motion for a separate trial because Roberts presented an antagonistic defense.

The trial court rejected this claim on post-conviction review:

First defendant claims error based on right to a separate jury where he claims that defenses were antagonistic. A pretrial motion for separate trials was made and argued. No antagonistic defenses were established. During trial codefendant Roberts indicated that he would testify. The jury was charged and deliberated against the charges against defendant, Shepard, and codefendant Thomas. The jury returned a verdict against Thomas and defendant before hearing an antagonistic defense.

*People v. Shepard*, No. 02-14804, * 1 (Wayne County Circuit Court, January 4, 2008).

A criminal defendant is not entitled to a separate trial merely because he or she might have had a better chance for acquittal in a separate trial, *Zafiro v. United States*, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses. *Stanford v. Parker,* 266 F. 3d 442, 458 (6th Cir. 2001). The Supreme Court, in fact, has indicated that "[M]utually antagonistic defenses are not prejudicial *per se.*" *Zafiro v. United States,* 506 U.S. at 538. A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. The *Zafiro* Court specifically recognized that a potential *Bruton* violation could require severance. *Id.* at 539. A habeas petitioner who seeks habeas relief on the basis of a state trial court's failure to sever his or her trial from his or her co-defendant's trial bears a very heavy burden. *Stanford,* 266 F. 3d at 459. Joinder of defendants for trial is the preferred course, which creates a presumption in favor of

9

joinder which must be overcome by the party seeking severance. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 641 (E.D. Mich. 2001).

To the extent that petitioner's severance claim is based upon the admission of Lamar Roberts' statement to Jerry Bigham at their joint trial, he is not entitled to relief because he has failed to show that the admission of this statement into evidence violated *Bruton.  See e.g. United States v. Hamilton,* 689 F. 2d 1262, 1275 (6th Cir. 1982).

More importantly, petitioner has failed to show that there were mutually antagonistic defenses between himself and his co-defendant to justify separate trials. The fact that a defendant seeks to lay blame upon the other defendant or defendants is not reason enough for a severance without a showing that "the jury is unable to treat evidence applicable to each defendant distinctively."  *United States v. Smith,* 197 F. 3d 225, 230 (6th Cir. 1999).  Antagonistic defenses occur "when one person's claim of innocence is predicated solely on the guilt of a co-defendant."  *United States v. Harris,* 9 F. 3d 493, 501 (6th Cir. 1993).

Lamar Roberts did not testify before the jury until the jury deliberated and reached a verdict in petitioner's case.  Therefore, any testimony from Roberts which may have sought to shift the blame to petitioner was not considered by the jury before they deliberated in petitioner's case.  Additionally, Roberts' statement to Bigham did not establish mutually antagonistic defenses that would require the severance of petitioner's trial, because Roberts admitted his involvement in the robbery and murder. *See Fox v. Ward*, 200 F.3d 1286, 1293-94 (10th Cir. 2000)(no mutually antagonistic defenses presented when each defendant admitted involvement in the felony but each

10

defendant tried to exculpate himself by inculpating codefendant in actual commission of murders, because relative culpability was irrelevant).

Finally, because Roberts' statement to Bigham would have been admissible against petitioner even if he had been tried alone, he cannot show that he was prejudiced by the trial court's decision to conduct a joint trial. *See Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008).  Petitioner is not entitled to habeas relief on his first claim.

### D.  Claim II - Admission of Photographs

Petitioner next claims that the trial court erred in admitting into evidence "graphic" photographs of the murder victim.  He is not entitled to relief on this claim.

It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.*" Kelly v. Withrow*, 25 F. 3d 363, 370 (6th Cir. 1994).  Petitioner's claim that the trial court admitted "graphic" photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See Cooey v. Coyle,* 289 F. 3d 882, 893-94 (6th Cir. 2002)(internal citation omitted).

### E.  Claim III - Prosecutorial Misconduct

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.  To prevail on a claim of prosecutorial misconduct, a petitioner must show that the alleged misconduct infected his trial with such unfairness

as to make the resulting conviction a denial of due process. *Byrd v. Collins*, 209 F. 3d 486, 529 (6th Cir. 2000) (*quoting Darden v. Wainwright*, 477 U.S. 168, 181 (1986))(*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Courts must keep in mind that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  "Therefore, even if the prosecutor's conduct was 'undesirable or even universally condemned,' *Darden*, 477 U.S. at 181 (quotation marks and citations omitted), it does not constitute a due process violation unless the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" *Byrd*, 209 F. 3d at 529 (end citations omitted).  In addition, because this case is a habeas case and is not a direct appeal, the inquiry into an issue of prosecutorial misconduct is less stringent. *See Spalla*, 615 F. Supp. at 227.  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)(*quoting Donnelly*, 416 U.S. at 645).

Petitioner first claims that the prosecutor vouched for the witnesses when he made the following remarks in closing argument:

> Yeah, what they're saying is corroborated by other information I know. Yeah, when I look at the person, I can, you know, through my life experiences believe that what they're saying is the truth.

(Tr. 9/24/2003, p. 93).

Petitioner further contends that the prosecutor vouched for the credibility of Jerry

12

Bigham by describing his testimony as being "rock solid." (*Id.* at p. 100).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd,* 209 F. 3d at 537 and n. 43. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner is not entitled to habeas relief on this claim because the prosecutor's comments were brief and isolated, in that they were part of a much larger 61 page argument that focused on the evidence. (Tr. 9/24/2003, pp. 75-115; 170-89). An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006). Moreover, with respect to the first claim of vouching, as the trial court indicated in rejecting petitioner's claim, *See Shepard*, No. 02-14804, * at 2, petitioner quoted the

13

prosecutor out of context. The prosecutor did not argue that he had a personal belief in the witnesses' credibility, but instead explained in a rhetorical manner the way in which a juror could reach a conclusion about a witness's credibility. (Tr. 9/24/2003, pp. 92-93). When taken in its full context, the prosecutor's comments were rhetorical and thus did not amount to improper vouching. *See U.S. v. Israel*, 133 Fed. Appx. 159, 165 (6th Cir. 2005). Moreover, the prosecutor's description of Bigham's testimony being "rock solid" was made in the context of arguing that Bigham's testimony had been consistent. This does not amount to improper vouching. *Joseph v. Coyle,* 469 F. 3d at 474. Finally, the jury was instructed that the lawyers' statements and arguments were not evidence (9/25/2003, p. 7). This instruction cured any prejudice that may have arisen from any improper vouching. *Byrd,* 209 F. 3d at 537.

Petitioner next contends that the prosecutor denigrated defense counsel by arguing that " a good lawyer can always dream something up that they think out to have been done that wasn't. Okay, I invite you not to fall into that trap." (Tr. 9/24/2003, p. 103).

The Sixth Circuit has held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee,* 231 Fed. Appx. 469, 480 (6th Cir. 2007)(*quoting United States v. August*, 984 F.2d 705, 715 (6th Cir.1992)). Thus, a prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel. *Id.*

Petitioner is not entitled to habeas relief on his claim that the prosecutor

14

improperly denigrated defense counsel, because even if the prosecutor's comments about petitioner's defense were improper, they were not flagrant enough to justify habeas relief. *See Henley v. Cason,* 154 Fed. Appx 445, 447 (6th Cir. 2005). The prosecutor's remark was brief and fairly isolated and was part of a larger sixty one page argument that focused on the evidence in the case. The trial court instructed the jury that the lawyers' arguments were not evidence. The prosecutor's remarks were relatively isolated, were not extensive, and were only a small part of a closing argument that focused heavily on summarizing the evidence presented at trial. *Byrd*, 209 F. 3d at 532. When combined with the instruction that the attorneys' arguments, questions, and statements were not evidence, the prosecutor's comments did not render the entire trial fundamentally unfair. *Id.* at 533.

Overall, petitioner is not entitled to habeas relief on his third claim.

### F. Claim IV - Exculpatory Evidence

Petitioner next claims that the prosecutor failed to provide defense counsel with a handwritten statement provided to the police by petitioner's girlfriend, Lisa Johnson, which he claims would have partially supported his alibi defense. (See also Claim V, *infra*).

To the extent that petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief. A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d 416, 441 (6th Cir. 2002).

To the extent that petitioner is contending that his due process rights were violated, this claim must fail also. Suppression by the prosecution of evidence

15

favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

As an initial matter, petitioner has failed to offer any evidence to show that this police report was not turned over to defense counsel prior to trial. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998). Other than conclusory allegations, petitioner has offered no proof that this police report was not provided to defense counsel prior to trial.

Secondly, Lisa Johnson was petitioner's girlfriend. There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *Mahaday v. Cason,* 367 F. Supp. 2d 1107, 1118 (E.D. Mich. 2005)(citing *Carter v. Bell,* 218 F. 3d 581, 601 (6th Cir.2000)). The *Brady* rule does not assist a defendant who is aware of essential facts that would allow him or her to take advantage of the exculpatory evidence at issue. *Coleman v. Mitchell,* 268 F. 3d 417, 438 (6th Cir. 2001). Petitioner has failed to establish that he was unaware of what Lisa Johnson's proposed testimony was going to be. Petitioner is not entitled to habeas relief on his fourth claim.

### G. Claims V and VII - Ineffective Assistance of Counsel

In his fifth claim, petitioner contends that he was deprived of the effective assistance of trial counsel. In his seventh claim, petitioner alleges the ineffective assistance of appellate counsel.

16

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner first contends that trial counsel was ineffective for failing to present alibi witnesses who could "account for the majority" of petitioner's whereabouts on the late night of November 4, 2002 and the early morning hours of November 5, 2002. Petitioner specifically claims that Lisa Johnson's statements to the police would account for his whereabouts up until about 10:30 p.m. to 11:00 p.m. on the night of November 4, 2002.  Petitioner further claims that a Ms. Austin would also account for his whereabouts up until about 10:30 p.m. that evening.  Petitioner claims that his brother James Shepard would indicate that he let petitioner into his house around 2:00-

17

2:30 a.m. on the early morning hours of November 5, 2002.

The problem for petitioner is that the crime in this case occurred sometime after 11:30 p.m. but before 2:00 a.m. on the late night and early morning of November 4-5, 2002. Pauline Jackson testified that she went to bed around 11:30 p.m. and was awoken sometime after by intruders. (Tr. 9/23/2003, pp. 172-74). After the break-in, Jackson called the murder victim's mother, who came over at about 12:30 a.m. (*Id.* at p. 189). Officer Mike Eggleston testified that the crime took place "a little bit after midnight." (Tr. 9/22/2003, p. 28). Detective Kenneth Floro testified that he discovered the murder victim's cellphone and reviewed its call history. (*Id.* at pp. 64-71). The last outbound phone call made by the victim occurred at 11:19 p.m. on November 4, 2002 and the last inbound call took place at 11:26 p.m. (*Id.* At pp. 68, 70-71). This would suggest that the victim was not murdered until sometime after 11:30 p.m. on the night of November 4, 2002.

Petitioner's proposed alibi witnesses could not provide testimony as to petitioner's whereabouts between 11:00 p.m. and roughly after midnight on November 4-5, 2002, the time period during which the crime occurred.

A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004)(internal quotation omitted). The failure to present a proposed alibi witness who would not lead to a defendant's acquittal does not amount to the ineffective assistance of counsel. *Id.* Because none of petitioner's proposed witnesses could have provided an "air-tight" alibi defense, counsel was not ineffective for failing to call them to testify at trial. *See Moore v. Parker*, 425 F. 3d 250, 253-54 (6th Cir. 2005).

18

Petitioner next alleges that trial counsel interfered with his right to testify by informing him that he would not call petitioner to testify on his own behalf, because this would "open the door to other acts evidence."

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). A federal court sitting in habeas review of a state court conviction should have "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F. 3d 627, 639 (6th Cir. 2009)(internal citation omitted). To overcome this presumption, a habeas petitioner must present record evidence that he or she somehow alerted the trial court to his or her desire to testify. *Id.* Because the record is void of any indication by petitioner that he disagreed with counsel's advice that he should not testify, petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F. 3d at 357.

Moreover, petitioner has failed to show that he was prejudiced by counsel's advice concerning whether he should testify or not. Petitioner has merely stated that he would have testified, without providing any details of his proposed testimony, which is insufficient to establish prejudice based upon counsel's allegedly deficient advice concerning whether he should testify or not. *Hodge,* 579 F. 3d at 641 (defendant did not demonstrate prejudice required to establish claim of ineffective assistance of counsel based upon defense counsel's alleged impairment of his right to testify at capital murder trial where defendant did not provide details about substance of his testimony

19

and merely speculated that his testimony would have had impact on jury's view of certain witnesses' credibility and of his involvement in murders).

Petitioner next contends that trial counsel was ineffective for failing to object to the prosecutorial misconduct that he complained of in Claim III, *supra.*

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the prosecutor's arguments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528.

Petitioner lastly contends that trial counsel was ineffective for failing to object to the admission of the photographs of the murder victim. Petitioner is mistaken. Trial counsel, in fact, did object to the admission of these photographs into evidence. (Tr. 9/22/2003, pp. 86-87). Because counsel did, in fact, object to the admission of these photographs, petitioner's ineffective assistance of counsel claim is without merit. *See e.g. Durr v. Mitchell,* 487 F.3d 423, 440 (6th Cir. 2007).

In his seventh claim, the petitioner contends that his appellate counsel was ineffective for failing to raise his first through fifth claims on his appeal of right. He cannot prevail on this claim because the Court has already determined that the petitioner's first through fifth claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*,

20

615 F. 3d 448, 452 (6th Cir. 2010); *cert. den* . 131 S. Ct. 1013 (2011)(*quoting Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner has therefore failed to show that appellate counsel was ineffective for failing to raise these claims on his appeal of right. The petitioner is not entitled to habeas relief on his seventh claim.

### H. <u>Claim VI - Cumulative Error</u>

Petitioner lastly asks the court to grant him habeas relief based on the cumulative errors that occurred in this case.  The United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine,* 291 F. 3d at 447.  Petitioner is therefore not entitled to habeas relief on the grounds of cumulative error.

### V. <u>Conclusion</u>

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus is DENIED**.**  This case is DISMISSED.

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore DECLINES to grant a certificate of appealability under 28

21

U.S.C. § 2253(c)(2). [1] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

     SO ORDERED.


                     _____

                     S/Avern Cohn
                     AVERN COHN
                     UNITED STATES DISTRICT JUDGE


Dated:  May 27, 2011


I hereby certify that a copy of the foregoing document was mailed to Timothy Shepard, 213526, Baraga Maximum Correctional Facility, 13924 Wadaga Road, Baraga, MI 49908 and the attorneys of record on this date, May 27, 2011, by electronic and/or ordinary mail.


                     S/Julie Owens
                     Case Manager, (313) 234-5160

---

[1] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.